## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20131-Civ-WILLIAMS/TORRES

MARIA DEL CARMEN DUARTE,

          Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social
Security Administration,

          Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Maria Del Carmen Duarte ("Plaintiff") [D.E. 17] and Andrew Saul, the Commissioner of the Social Security Administration ("Defendant" or the "Government") [D.E. 18] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.[1] Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's decision. Therefore, Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

---

[1]     On January 14, 2020 the Honorable Kathleen Williams referred the parties' cross-motions to the undersigned Magistrate Judge for disposition.   [D.E. 4].

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 56 years old on the onset date of her alleged disability.   She has a high school education and past work as a nursing assistant from 2004 to 2017, and prior work experience as a driver for four months in 2015.   On March 10, 2017, Plaintiff filed an application for Social Security benefits because of a knee injury that required three surgeries, and an inability to work because of fatigue, pain, and a need to keep her legs elevated.   The Social Security Agency denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff requested a hearing before an administrative law judge ("ALJ") that took place on September 12, 2018. The ALJ, Tracey Leibowitz, issued an unfavorable decision on December 13, 2018, denying Plaintiff's application for benefits.

The ALJ found at step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 30, 2015.   At step two, the ALJ determined that Plaintiff suffered from several severe non-listing level impairments, including bilateral osteoarthritis of the knee, status/post arthroscopic partial lateral meniscectomy and chondroplasty, status/post total knee replacement arthroplasty, depression, and obesity.   The ALJ then determined, at step three, that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1527(b)[] except occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl.

[D.E. 10 at 32].

Proceeding to step four, the ALJ found that Plaintiff could perform her past relevant work as a chauffeur and that she was not disabled within the scope of the Social Security Act. The ALJ did not make an alternative step five finding. Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request on November 13, 2019. Plaintiff filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and we must defer to the

ALJ's decision even if the evidence may preponderate against it.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).  However, no presumption of validity attaches to the Commissioner's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.  *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  In determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew.  Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.  Therefore, a court's responsibility is to ensure that the

4

proper legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.     ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant bears the burden of producing evidence that proves he or she meets this statutory definition.  "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).  The steps are followed in order to determine if the claimant is disabled.  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends.  *See* 20 C.F.R. § 404.1520(b).  In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.  If the ALJ does

5

not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments.   *See* 20 C.F.R. § 416.945(a)(1).   A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).   *See* 20 C.F.R. § 404.1545 ("Residual functional capacity assessment.   Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that

6

affect what you can do in a work setting.   Your residual functional capacity is the most you can still do despite your limitations.").

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three respects: (1) that the ALJ's RFC assessment lacks substantial evidence, (2) that the ALJ's evaluation of the medical evidence is erroneous, and (3) that the ALJ's rejection of Plaintiff's alleged symptoms and limitations is unsupported in the record.   We will consider each argument in turn.

### A.   *Whether Substantial Evidence Supports the RFC Assessment*

Plaintiff's first argument is that the ALJ's RFC assessment lacks substantial evidence.   An RFC is an assessment of a claimant's ability to do work despite his or her impairments.   *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).   An ALJ makes an RFC finding based on all the "relevant medical and other evidence."   20 C.F.R. § 404.1545(a)(3).   The ALJ must consider any statements by medical sources about what the claimant can still do and whether those statements

are based on formal medical examinations. The ALJ must also consider descriptions and observations of the limitations resulting from a claimant's impairments, including limitations that result from symptoms, such as pain.[2]  *Id.*  Only "acceptable medical sources" can provide medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of" a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions.  *Id.* § 404.1527(a)(2).  Ultimately, an ALJ may not make medical findings herself, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), but it is her responsibility to resolve conflicting medical opinions.  *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

Plaintiff complains that the RFC assessment is inadequate because, although the ALJ relied primarily on Dr. Rodriguez, her medical opinion only covered a window of time from January 2017 to an anticipated date of recovery.  Plaintiff argues that that the ALJ's decision falls short because the ALJ never addressed two surgeries that took place between the alleged onset date of August 30, 2015 and January 2017.  Plaintiff considers this to be a serious misstep because, without incorporating this time period into the RFC analysis, the ALJ failed to take into

---

[2]   The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."  20 C.F.R. § 404.1502.  "Acceptable medical source" includes treating sources, nontreating sources, and nonexamining sources.  *Id.*

account any limitations that could have altered her unfavorable decision.   Plaintiff contends, for example, that on August 29, 2015, she reported hearing her left knee crack, resulting in severe pain that required emergency treatment.   Plaintiff also asserts that, on October 6, 2015, a left knee MRI indicated that she suffered meniscal tears.   And after her November surgery, she reported that her pain level was an eight out of ten with limitations in performing daily activities, including an inability walk more than a block.   Because the RFC determination omitted a crucial time period, Plaintiff concludes that the ALJ's decision lacks substantial evidence.

Plaintiff's argument is unpersuasive because the ALJ did not rely exclusively on Dr. Rodriguez's opinion as the foundation for the RFC assessment.   Instead, the ALJ evaluated the entire medical record and explicitly considered the time period that Plaintiff complains was omitted.   The ALJ noted, for instance, that Plaintiff visited the emergency room in August 2015 and that Plaintiff experienced moderate left knee pain and tenderness.   [D.E. 10 at 33].   The ALJ also discussed Plaintiff's visit to her primary care physician the following month, where documents showed that Plaintiff had a normal examination with negative x-rays and a referral to an orthopedist.   *See id.*   And afterwards, the ALJ examined Plaintiff's visit with a sports medicine specialist – who diagnosed her with arthritis and a lateral meniscal tear in her left knee – and the doctor's recommendation of a steroid injection alongside a referral to physical therapy and a surgeon.

Plaintiff maintains that the ALJ's decision remains inadequate despite all of this evidence because there was no detailed explanation as to *how* this evidence was

9

incorporated into the RFC assessment.   But, there is no requirement for an ALJ to "reference every piece of evidence in [her] decision."   *Retherford v. Berryhill*, 2019 WL 400063, at *13 (N.D. Fla. Jan. 31, 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," as long as the ALJ's decision "is not a broad rejection which is 'not enough to enable [the district court or this court] to conclude that [the ALJ] considered her medical condition as a whole.'")).   The ALJ evaluated at least three specific instances of Plaintiff's medical condition during the time period that Plaintiff complains about, coupled that with a review of Plaintiff's medical history, diagnostic signs, clinical evaluations, and the effects of Plaintiff's treatment, and took all of that into consideration in reaching her RFC assessment. Nothing more is required to show that the RFC is supported with substantial evidence.

Plaintiff's second argument is based on the ALJ's decision to only assign "partial weight" to Dr. Alba's September 2017 opinion.   Dr. Alba opined that Plaintiff had difficulties with standing for long periods and lifting heavy objects. [D.E. 10 at 37].   Plaintiff argues that, although the ALJ discounted Dr. Alba's opinion because it failed to include a function-by-function analysis[3], the ALJ should have incorporated the specific functional limitations that Dr. Alba identified.   If the

---

[3]     To clarify, Plaintiff does not argue that ALJ erred in discounting Dr. Alba's opinion because it failed to provide a function-by-function analysis.   She only claims that, given the "partial weight" the ALJ assigned, more limitations should have been incorporated into the RFC determination.

ALJ had done so, Plaintiff suspects that it would have undermined the RFC finding that Plaintiff could only perform light work because of her difficulty in standing for long periods of time.   Plaintiff also suggests that Dr. Alba's recommendation – that Plaintiff would benefit from a job that allows light duty – was ignored because it does not go hand in hand with the RFC determination.   Thus, Plaintiff takes issue with the ALJ's failure to state any specific reasons for accepting only some of Dr. Alba's limitations.

Plaintiff's argument is unavailing, in many respects, because it presumes that the limitations Dr. Alba identified undermine the RFC determination.   But, that is not at all clear because – although Dr. Alba opined that Plaintiff had *difficulties* with standing for long periods and lifting heavy objects – Plaintiff has failed to explain how that means she is unable to stand or walk for up to six hours in performing light work.   Plaintiff also makes an unfounded argument that the ALJ failed to reconcile Dr. Alba's opinion with the RFC assessment, but Plaintiff forgets that Dr. Alba failed to include a function-by-function assessment.   If Dr. Alba had made that finding, then her opinion could have been given more consideration and the RFC could have been adjusted accordingly.   Yet Dr. Alba failed to do so, meaning Plaintiff's actual grievance is with Dr. Alba – not the ALJ.   And even if the ALJ somehow erred in failing to give more weight to Dr. Alba's 2017 opinion, Plaintiff has still failed to explain why all the other evidence in the record, including Plaintiff's own testimony, does not support the RFC determination.   If anything, the ALJ's failure to give more weight to Dr. Alba would be harmless error because the

conclusion she reached would not change given the consistency with all the other evidence in the record.   For these reasons, Plaintiff's argument with respect to the ALJ's RFC assessment lacks merit.

### B.   *Whether Substantial Evidence Supports the Weight Assigned to the Medical Opinions*

Next, Plaintiff argues that the ALJ erred in her evaluation of the medical record.   An ALJ evaluates several factors when determining how much weight to assign a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors. *See id*.   Absent good cause, the ALJ must give a treating physician's[4] opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.   "When electing to disregard the opinion of a treating

---

[4]     A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

physician, the ALJ must clearly articulate its reasons." *Id.* Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence). The opinion of a one-time examiner is not entitled to deference or special consideration. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is generally entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight given to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion

13

where it was consistent with medical evidence and findings of the examining physician).   The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion.   *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.   *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).   However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer,* 395 F.3d at 1211.   If an ALJ makes clear that he or she considered a physician's opinion and that the findings were consistent with the opinion, then there is no harmful error.   *See Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

1.   _Dr. Rodriguez_

Plaintiff complains that the ALJ's decision is flawed because it assigned "great weight" to Dr. Rodriguez's nonexamining opinion, and only gave "partial" or "little weight" to all the treating source opinions, including Drs. Alba, Gonzalez, Baraga, and Padilla.   Plaintiff reasons that the ALJ's sole reliance on a nonexamining opinion constitutes reversible error because that alone cannot constitute substantial evidence for an administrative decision.   And even assuming that the ALJ properly credited Dr. Rodriguez's opinion, Plaintiff states that her opinion only covered seven relevant months of Plaintiff's medical history and does not otherwise provide substantial evidence to find that Plaintiff can return to her prior employment.   Plaintiff therefore concludes that this case should be remanded so that the ALJ can re-evaluate the medical record and make a decision that is fully supported with substantial evidence.

Dr. Rodriguez is a state agency doctor who opined on July 31, 2017 that Plaintiff could perform work at a light exertional level with no postural, manipulative, or environmental limitations.   [D.E. 10 at 107-09].   Although Dr. Rodriguez limited her opinion to the twelve months after January 18, 2018, she found that Plaintiff could stand, walk, or sit for six hours in an eight-hour workday. Dr. Rodriguez relied, in part, on the medical records of Plaintiff's physical examinations and x-rays to find that the impairments could be expected to produce the alleged symptoms, but that they were not expected to last twelve months.   _See id_. at 108.

Plaintiff argues that the ALJ erred because the "'opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician.'" *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (quoting *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981) (Unit B)).   Plaintiff demands that the same rule apply here because the ALJ relied too heavily on Dr. Rodriguez when the latter only issued an opinion into the future as opposed to a discussion of Plaintiff's current and prior limitations.   Because the ALJ failed to explain why Dr. Rodriguez's opinion was assigned more weight than all the treating physicians, Plaintiff requests that this case be remanded for a failure to appropriately weigh the evidence presented.

The Government's response is that Plaintiff's argument is nothing more than a request to have the Court re-weigh Dr. Rodriguez's opinion.   The Government also takes aim at Plaintiff's suggestion that a non-examining opinion can never be given greater weight than a treating physician.   Although the opinion of a treating physician is generally entitled to more weight than a nonexamining physician, the Government claims that the Social Security regulations consider many other factors when making this determination.   These factors include not only the treatment relationship, but also whether there is substantial evidence to support the opinion itself, how that opinion is consistent with the record as a whole, and many other factors.   Indeed, the Government suggests that Plaintiff is relying on old Eleventh Circuit case law in support of her position and that it reflects a misunderstanding of how medical sources are evaluated today.

A non-examining physician can, of course, be given greater weight than a treating physician.  That happens all the time "where a non-examining physician's report includes information that is not contained in the examining physicians' reports," and is otherwise consistent with the record.  *Kemp*, 308 F. App'x at 427; *see also* 20 C.F.R. § 404.1527(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight will depend on the degree to which [the physicians] provide supporting explanations for their opinions[.]").  An ALJ may also assign substantial weight to the opinion of a non-examining physician if the opinion is consistent with examining physician reports.  *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) ("[T]he report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence . . . Our task, then, is to compare the three reports and determine whether [the non-examining doctor]'s report disagrees with the [examining doctors' reports].") (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093-94 (11th Cir. 1985)).

The more difficult question is whether an ALJ's decision can be supported by substantial evidence when the *only* opinion assigned "great weight" is a non-examining physician.  The Government did not directly tackle this issue[5] and,

---

[5]     The Government tries to pushback against these cases because they are "old" and outdated, but that is inaccurate.  *See, e.g.*, *Conner v. Colvin*, 2016 WL 1175270, at *11 (S.D. Ala. Mar. 24, 2016), *Report and Recommendation adopted*, 2016 WL 1178375 (S.D. Ala. Mar. 24, 2016) ("*Swindle* remains good law in this Circuit").

at first glance, there is some support for Plaintiff's position that a non-treating physician's opinion "taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990); *see also Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians . . . when contrary to those of examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence"); *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) ("We accord little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient.") (citing *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980)).

Plaintiff tries to equate the facts of this case to several Eleventh Circuit decisions because the ALJ only assigned "great weight" to a non-examining opinion (i.e. Dr. Rodriguez) and discounted the opinions of every treating physician.   But, the analysis is not that simple.   While the Eleventh Circuit has previously held that the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision," *Swindle* 914, F.2d at 226 n.3, under certain circumstances, substantial evidence can support an ALJ's decision to assign great weight to the opinion of a state agency physician if that opinion is consistent with the record as a whole.   *See Ogranaja v. Commissioner of Soc. Sec.,* 186 Fed. App'x 848, 850–51 (11th Cir. June 5, 2006) (citing *Swindle* but then noting that, there, "[t]he ALJ arrived at his decision *after considering the record in its entirety and did not rely solely on the*

18

*opinion of the state agency physicians.*   The ALJ found that, unlike [the treating physician's] opinions, the expert opinions of the non-examining state agency physicians were supported by and consistent with *the record as a whole.*") (emphasis added).   As one district court aptly put it:

> In isolation, *Swindle* seems to suggest that the opinion of a nonexamining physician cannot be substantial evidence under any circumstances.   *Swindle* cites *Broughton* as authority, but that case "held that the opinion of a nonexamining physician is entitled to little weight *if it is contrary to the opinion of the claimant's treating physician.*"   *Broughton,* 776 F.2d at 962 (emphasis added).   That formulation of the law is consistent with *Lamb and Sharfarz.*   Thus, the court concludes that the opinion of a non-examining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians *or other medical evidence in the record.*

*Hogan v. Astrue*, 2012 WL 3155570, at *5 (M.D. Ala. Aug. 3, 2012) (emphasis added).

Here, the ALJ did not make the same mistake as the cases Plaintiff relies upon because, although she only assigned Dr. Rodriguez's opinion "great weight," the ALJ did not rely solely on that opinion in reaching her unfavorable decision. The ALJ also considered the entire record and gave the opinion "great weight" because of Dr. Rodriguez's program knowledge (i.e. her familiarity with the Social Security Rules and Regulations) and her citations to the underlying medical record. The ALJ further found that Dr. Rodriguez's opinion *was consistent with the overall record* because of Plaintiff's successful knee replacement, benign post-surgery examinations, demonstrated progressive improvement, daily gym workouts, the elimination of an assistive ambulatory advice, an admission that Plaintiff was

working, mild pain due to medication control, and noncompliance with recent medication and treatment recommendations.   [D.E. 10 at 36-37].   And the ALJ gave an additional reason for assigning the opinion "great weight" because of Plaintiff's own testimony:

> This opinion is additionally supported by the claimant's admission that she is working; has only mild pain due to medication control; and has been non-compliant with recent medication and treatment recommendations.   The claimant's very active lifestyle and continued engagement in a variety of ADLs further demonstrates her ability to work as described.

*Id.* at 36.

This is not a case where an ALJ relied solely on Dr. Rodriguez and abruptly ended the analysis.   Instead, the ALJ based her decision on Dr. Rodriguez's opinion, the underlying medical records, the record as a whole, and Plaintiff's own testimony.   *See, e.g., Davis v. Astrue,* 2010 WL 1381004, at *5 (M.D. Ala. Mar. 31, 2010) (holding that "the ALJ properly assigned 'great weight' " to the opinion a non-examining physician because that opinion was "supported by and consistent with the record as a whole[,] unlike the opinion of plaintiff's treating sources").

This, of course, presumes that the ALJ properly discounted the opinions of the treating physicians for the decision to be supported with substantial evidence. *See Wilkinson v. Commissioner of Soc. Sec. Admin.,* 289 F. App'x. 384, 386 (11th Cir. Aug. 20, 2008) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion. The ALJ considered the opinions of other treating, examining, and non-examining

physicians; rehabilitation discharge notes indicating improvement; and Wilkinson's own disability reports and testimony.") (citing *Broughton,* 776 F.2d at 962); *Wainright v. Commissioner of Soc. Sec. Admin.,* 2007 WL 708971 (11th Cir. Mar. 9, 2007) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected examining psychologist's opinion, clearly articulated his reasons for doing so, and the decision was supported by substantial evidence); *Osborn v. Barnhart,* 194 F. App'x 654, 667 (11th Cir. Aug. 24, 2006) (holding that it was proper for the ALJ to give more weight to the non-examining physician and only minimal weight to the treating physician because the treating physician's opinion was not supported by objective medical evidence).") (emphasis added and citations modified).   Therefore, to make a final determination on whether the ALJ erred in her evaluation of the medical record, we must consider whether substantial evidence supports the decision to discount the opinions of the treating physicians.

### 2.   *The Treating Physicians*

The first treating physician that Plaintiff challenges is the weight assigned to Dr. Alba's 2018 opinion.   There, Dr. Alba opined that Plaintiff could not walk for more than two blocks, stand for more than one hour, lift more than ten pounds, or work for more than eight hours in a seated position.   [D.E. 10 at 37].   Plaintiff contends that the "little weight" assigned to this opinion is erroneous because, although the opinion recites the claimant's self-reports, other parts reference Dr. Alba's clinical findings:

She underwent a left total knee arthroplasty on 01/18/2017 which was associated with significant prolonged recovery time due to her knee stiffness noted prior and after surgery.   Patient has also complained of residual pain associated with limitations to perform her activities of daily living.   This has been associated with significant limitations to work.   She reports limitations to walk for long distances (more than 2 blocks), stand for long periods of time (more than 1 hour) or bend. She can not lift more than 10 lbs. She is not able to work for more than 8 hours in a seating position or more than 4 hours standing a day. She continues to be treated for this residual pain.

*Id*. at 953.

The most obvious flaw with Plaintiff's argument is that – even if we ignored the fact that Dr. Alba relied to some extent on Plaintiff's own self-reported symptoms – that does nothing to undermine any of the other reasons that the ALJ provided in her decision.   The ALJ also discounted Dr. Alba's opinion because the statements contradicted her own clinical findings, Plaintiff's testimony, and the overall record showing that Plaintiff had mild pain and an active lifestyle.   *See Gainous v. Astrue*, 402 F. App'x 472, 474 (11th Cir. 2010) ("[T]he claimant's daily activities can contradict the treating physician's opinion and lessen its credibility.") (citing *Phillips*, 357 at 1241); *see also Jones v. Saul*, 2019 WL 7499163, at *8 (N.D. Fla. July 8, 2019) ("[W]hen the examining opinion contradicts itself or the record as a whole, it may be rejected.") (citing cases).   Because Plaintiff failed to explain why any of these other reasons did not constitute good cause to discredit Dr. Alba and we find none based on our own independent review, the arguments aimed at Dr. Alba lack merit.

22

Second, Plaintiff complains about the "little weight" that the ALJ assigned to treating surgeon Dr. Baraga.   He opined on July 11, 2016 that Plaintiff should remain out of work until she could safely perform certain tasks and that he would re-evaluate her status six weeks later.   Plaintiff states that, although this opinion was intended to be short-lived with a pending re-evaluation, the ALJ was wrong to discount it because there is no evidence that Plaintiff's condition improved for at least year afterwards.

This argument does not deserve much consideration because, as the ALJ stated in her decision, Dr. Baraga's opinion was only effective for six weeks post-surgery.   And it is well established that the length of a treatment relationship can provide good cause for an opinion to be discounted.   *See, e.g.*, *Works v. Astrue*, 2008 WL 4838701, at *3 (M.D. Ala. Nov. 6, 2008) ("The record showed Works's treatment by Dr. Greene was of short duration.   Consequently, the length of the treatment relationship with Works, and Works's testimony about a successful response to medication, provide "good cause" under *Phillips* for the ALJ to discount the opinions of disability.").   Plaintiff wants to take Dr. Baraga's opinion and stretch it for much longer than what it provides because it supposedly coincides with the opinions of other physicians.   But, there is no basis to take that approach.   If an ALJ evaluated medical opinions and stretched them weeks, months, or even years longer than what they were intended, that may be a reason, by itself, for a Court to find that a decision lacks substantial evidence.

23

The ALJ also discounted Dr. Baraga's opinion because he failed to provide a function-by-function analysis and failed to include any treatment notes in support of his opinion.   Plaintiff never even mentions either of these reasons that the ALJ provided, probably cause they provide additional reasons for the weight that the ALJ assigned.   *See, e.g.*, *Timmons v. Astrue*, 2009 WL 1324365, at *3 (M.D. Ga. May 8, 2009) (finding good cause to discredit a medical opinion because "the record contain[ed] no treatment notes or tests results").   Thus, the Plaintiff's arguments with respect to Dr. Baraga fail for an abundance of reasons.

Third, Plaintiff takes issue with the way in which the ALJ weighed the medical opinion of Dr. Gonzalez, who opined in September 2018 that the claimant could not perform sedentary work, required complete freedom to rest without restriction, and had to elevate her lower extremities as needed.   [D.E. 10 at 37]. Plaintiff suggests that the ALJ erred because Dr. Gonzalez's "opinion is consistent with the findings of treating specialists."   [D.E. 17 at 12].   This is a feeble argument because it ignores all the reasons the ALJ provided for assigning "little weight" to Dr. Gonzalez's opinion:

> The opinion is given little weight because it is unsupported by Dr. Gonzalez['s] clinical findings, including only mild swelling and unspecified chronicity; and no crepitus or evidence of a recommendation to keep the legs elevated.   It is additionally more extreme than warranted given the overall record, as described below.

[D.E. 10 at 37].   Therefore, given Plaintiff's failure to challenge any of the reasons provided in the decision itself, the Court's independent review confirming that Dr. Gonzalez's opinion being inconsistent with his own clinical findings, and the opinion

being inconsistent with the overall record, the ALJ had good cause to discount this opinion.   *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We have . . . found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.") (citing *Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir. 1991)).

Plaintiff's final challenge to the medical record is that the ALJ erred when she assigned "little weight" to Ms. Padilla, who opined that "claimant had a lack of extension that affected her stability and tolerance for standing and walking."   [D.E. 10 at 37].   The ALJ discounted Ms. Padilla's opinion "because a physical therapist is not an acceptance medical source," and she failed to "provide a function-by-function analysis."   *Id*.   Plaintiff claims that the ALJ was mistaken because, while the regulations do not explicitly state that a doctor of physical therapy is an acceptable medical source, she should fit into that category because she was "an individual licensed as a healthcare worker by a State and working within the scope of practice permitted" by law.   20 C.F.R. § 404.1501(a) & (d).   And although Plaintiff acknowledges that Ms. Padilla failed to provide an assessment of all functional limitations, she takes the position that Ms. Padilla's opinion should have been given more weight because it was consistent with other medical providers and with Plaintiff's allegations that she had difficulty with stability, standing, and walking.

It is undisputed that Ms. Padilla holds a doctorate in physical therapy.   The problem is that she is not an acceptable medical source, meaning her opinion cannot be used to establish the existence of a medically determinable impairment.   *See Duffy v. Comm'r of Soc. Sec.*, 2017 WL 5444530, at *18 (M.D. Fla. Mar. 20, 2017), ("Like Rye, she is not an acceptable medical source, so her opinion cannot be used to establish the existence of a medically determinable impairment.") (citing Social Security Ruling 06-03p, 2006 WL 2263437 (Aug. 9, 2006); *Michel v. Colvin*, 640 F. App'x 585, 594-95 n.7 (8th Cir. 2016) (finding that a physical therapist is not an acceptable medical source, even if he holds a doctor of physical therapy degree)); *see also Sommers v. Colvin*, 2015 WL 4633516, at *7 (N.D. Fla. Aug. 3, 2015) ("Plaintiff refers to this physical therapist as 'Dr. Hussein.'   While his credentials indicate he holds a doctor of physical therapy degree, they do not reflect that this therapist is a medical doctor or other acceptable medical source.") (internal citation omitted).

This also means that, "[w]hile the ALJ was required to consider the opinion[] of [Ms. Padilla], the ALJ was not required to give [her] opinions controlling weight over the opinions of acceptable medical sources[.]"   *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (citing regulations); *see also Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) ("The Social Security Administration has explained only evidence from 'acceptable medical sources' can establish the existence of a medically determinable impairment, and only 'acceptable medical sources' can give medical opinions or be considered treating sources, whose medical opinions may be entitled to

controlling weight.") (citing SSR 06-03p, 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006)).    And even if Ms. Padilla should have been construed as a medical source, Plaintiff never explains why her opinion should have been entitled to more weight if she failed to provide a function-by-function analysis.   That point is noticeably absent in Plaintiff's motion and reply.   So, because Plaintiff failed to rebut this deficiency in Ms. Padilla's opinion or to explain in greater detail why the opinion should have been assigned more weight, there is nothing more to consider with respect to Ms. Padilla.   *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

### C.   *Whether Substantial Evidence Supports the Rejection of Plaintiff's Complaints*

The final issue is whether the ALJ failed to properly evaluate her symptoms and allegations of pain.   The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled.   *See* 20 C.F.R. § 404.1529(a).   "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   *Wilson*, 284 F.3d at 1225 (citation omitted).   An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and

27

may properly consider the credibility of a claimant when making a determination of disability. *See id.* at 1225-26. If an ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor. *See Dyer,* 395 F.3d at 1212 ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons").

Plaintiff argues that the ALJ committed reversible error because she based her decision only a selective portion of the record without considering other evidence that substantiated the allegations presented. Plaintiff claims, for example, that there was no evidence that she could return to a workplace and that – although she participated in extensive physical therapy – she was unable to improve her medical condition to the point where she could return to light exertional activity. She also

takes issue with the ALJ's reliance on the fact that she could attend church and exercise for one hour per day because neither of those activities do anything to show that Plaintiff can stand and walk for six hours in a competitive work environment. Thus, Plaintiff states that she continues to experience severe pain, and the ALJ had no basis to discount her symptoms.

Plaintiff's arguments are not compelling, for the most part, because the ALJ gave many detailed reasons for rejecting her subjective complaints. During the disability hearing, Plaintiff testified that she exercised daily at a gym for one hour following her knee surgeries, including riding a stationary bicycle and using an elliptical. Plaintiff also stated that she made sandwiches for lunch, took a shower by herself, shopped at Walmart, travelled to the bank, attended church every Saturday, walked on the beach every Sunday, and attended a two hour church praise session on Thursday evenings. [D.E. 10 at 33]. Plaintiff then supported that with additional statements that her medications reduced her pain level to a two out of ten. The ALJ found these actions to be consistent with Plaintiff's post-surgical activities because, in June 2017, she was able to cook, wash dishes, do laundry, watch television, drive, manage her finances, and had no difficulties with memory, understanding, concentrating, completing tasks, or getting along with others.

Plaintiff maintains that the ALJ's decision lacks substantial evidence because there is evidence in the record that her impairments caused the alleged symptoms. Plaintiff has unfortunately missed the forest for the trees because that is not the relevant issue. The issue is whether Plaintiff's statements concerning the

intensity, persistence, and limiting effects of her symptoms are consistent with the medical evidence in the record. The ALJ made this point clear in her decision because, given all the evidence and Plaintiff's own testimony, her allegations of pain did not go hand in hand with the underlying record:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision.

*Id*.

Accordingly, substantial evidence supports the ALJ's credibility determinations because there is a detailed analysis of the record and Plaintiff does not otherwise raise any other specific challenges as to how the ALJ erred in rejecting her symptoms and allegations of pain. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 540 (11th Cir. 2016) ("Credibility determinations are the province of the ALJ, and will not be overturned unless not supported by substantial evidence.") (citing *Moore*, 405 F.3d at 1212). Plaintiff's motion for summary judgment [D.E. 17] should therefore be **DENIED**, Defendant's motion for summary judgment [D.E. 18] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision.   The ALJ applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.   For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 17] be **DENIED**, that Defendant's motion for summary judgment [D.E. 18] be **GRANTED**, and that the ALJ's decision be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of December, 2020.


*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge